**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 09:23 AM October 24, 2014**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SII LIQUIDATION COMPANY, | ) | CASE NO. 10-60702 |
| | ) | |
| Debtor. | ) | ADV. NO. 14-6024 |
| _____ | ) | |
| SCHWAB INDUSTRIES, INC., | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| THE HUNTINGTON NATIONAL | ) | **INTENDED FOR PUBLICATION)** |
| BANK et al., | ) | |
| | ) | |
| Defendants. | ) | |

    Now before the court is a motion to remand filed by Plaintiff following Defendant The Huntington National Bank's ("Huntington") removal of the case from the Cuyahoga County Court of Common Pleas on June 3, 2014.[1] Huntington opposes Plaintiff's request for remand.

---

[1] Defendants Hahn Loeser & Parks LLP, Lawrence Oscar and Andrew Krause also filed a removal action on June 3, 2014, identified as Schwab Ind., Inc. v. The Huntington Nat'l Bank, Adv. Proc. No. 14-6025. A motion to remand is also pending in that adversary which will be considered separately to the extent issues remain following

1

Bankruptcy court jurisdiction emanates from 28 U.S.C. § 1334. In accordance with § 1334(b), the United States District Court for the Northern District of Ohio issued a general order of reference on April 4, 2012, thereby transferring its jurisdiction to the bankruptcy court. Jurisdiction will be discussed further hereinafter. Venue is proper under 28 U.S.C. § 1409. The court takes judicial notice of the main bankruptcy case and related adversary proceedings.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

I.   **The Parties**

A.  **Schwab Industries, Inc.**

Schwab Industries, Inc. ("Schwab Ind.") was formed more than forty years ago by Jerry Schwab. Schwab Ind. was an Ohio corporation headquartered in Dover, Ohio with assets located in Ohio and Florida, including an orange grove with potential limestone mining opportunities and a deep water port. With its affiliates,[2] Medina Cartage Co., Medina Supply Company, Quality Block & Supply, Inc., O.I.S. Tire, Inc., Twin Cities Concrete Company, Schwab Ready-Mix, Inc., Schwab Materials, Inc., and Eastern Cement Corp., Schwab Ind. "produce[d], suppl[ied] and distribute[d] ready-mix concrete, concrete block, cement and related supplies to commercial, governmental and residential contractors throughout Northeast Ohio and Southwest Florida." (M. Joint. Admin. ¶ 4, Main Case ECF No. 6)  In 2010, Schwab Ind. was owned by four family members: Jerry Schwab; his wife, Donna Schwab; and their two children, Mary Lynn Schwab and David Schwab.

By the mid-2000s, Schwab Ind. had revenues in the hundreds of millions of dollars. But as a result of the Great Recession, and its severe impact on the real estate industry, Debtors' sales declined by nearly fifty percent between fiscal years 2007 and 2009, from approximately $300,000,000 to $105,000,000. "The decrease in sales negatively impact[ed] Debtors' working capital availability and cash flows." (Id. at ¶ 19)  By its own admission, Schwab Ind. experienced a cash flow problem in the winter of 2008-2009. In January 2010, Schwab Industries, Inc.'s primary secured lenders declared a default. Defendant Huntington National Bank was one of the secured lenders of Schwab Ind.

Seasonal fluctuations in revenue resulted in the need for Schwab Ind. to obtain capital infusions during its off-season. "Plaintiff traditionally obtained from the Secured Lenders a loan in the approximate amount of $2,000,000.00 called an "over advance" which provided capital to allow Plaintiff to meet its financial obligations during the inclement winter months

---

this opinion.
2  Schwab Ind. was the parent holding company and either directly or indirectly owned all equity interests in the affiliated companies.

2

when the construction industry was dormant." (Cuyahoga Cty. Complaint ¶ 26, Adv. Case ECF No. 1-1) In 2009, Plaintiff was unable to obtain the loan necessary loan from its secured lenders. Schwab Ind. alleges that its inability to secure the loan was a contributing factor in Schwab Ind.'s decision to file bankruptcy.

On February 28, 2010, Schwab Ind., along with related entities, (now collectively known as "Debtors") filed chapter 11 bankruptcy petitions.[3] Debtors were represented by Hahn Loeser & Parks, LLP ("HLP"), as main bankruptcy counsel, and Brouse McDowell LPA, as conflicts counsel. Lead bankruptcy counsel was Lawrence Oscar.

After filing bankruptcy, Debtors were unable to obtain post-petition financing to continue operations. As a result, Debtors sold substantially all of their assets in May 2010. As part of the purchase agreement, Debtors agreed "to change their corporate names (and all doing business as registrations and foreign qualifications registrations using such corporate names) within 15 days after the Closing to names that do not use any name that is the same as or confusingly similar to any name included in the Acquired Assets and shall seek new case captions in their Bankruptcy Case." (Asset Purchase Agreement ¶ 8.8, Adv. Case. ECF No. 24-1)

Later that year, Debtors confirmed a plan of liquidation and Debtors' remaining assets were transferred to a Creditor Trust. Under paragraph twenty-six of the confirmation order, Debtors became known as SII Liquidation Company and their remaining trade names were transferred to OldCastle Materials, Inc., the May 2010 purchaser of the bulk of the assets. (Findings of Fact ¶¶ 26, 28; Main Case ECF No. 698). Further, the amended plan of liquidation, confirmed on December 15, 2010, provided for the wind-down and dissolution of Debtors and retirement of the interests of the equity security holders. (Am. Plan ¶¶ 5.7, 7.5, Main Case ECF No. 698-1)

In March 2014, the Creditor Trustee, John B. Pidcock, entered into a settlement agreement with David Schwab, a former equity stakeholder in Schwab Ind. that settled some of the Creditor Trust's claims against David Schwab and provided for the reissuance and sale of Schwab Ind.'s stock to him for $100,000. The plaintiff in this action purports to be the entity that purchased the reissued stock of the liquidated Debtors.

B. **The Schwab Trust**

In the early 1990s, Jerry Schwab created a trust ("Schwab Trust") for the benefit of his children, David A. Schwab and Mary Lynn Schwab. Defendant Andrew Krause ("Krause"), now an attorney with Hahn, Loeser & Parks LLP ("HLP"), provided legal assistance in the formation of the trust. The trust res consisted of life insurance policies on the lives of Jerry Schwab and his wife, Donna S. Schwab. Pursuant to a split dollar agreement, the life insurance premiums were paid by Schwab Ind. In exchange for the premium payments, Schwab Ind. obtained collateral security interests in the premiums contributed to the Trust. Huntington is the

---

[3] As of the confirmation date, the debtors became known as SII Liquidation Company. (Confirmation Order ¶ 26, Main Case ECF No. 698)

trustee ("Trustee") of the trust as successor to Huntington Trust Company of Florida NA.

An advisory board has authority to make decisions for the Schwab Trust. In 2009, this board authorized a loan of $2,000,000, and up to $3,000,000, to provide working capital to Schwab. Ind. from trust assets. Huntington, as trustee of the Schwab Trust, sought a legal opinion on the propriety of making the loan. The opinion, which advised against the loan, came from Attorney Krause, now employed by HLP. Plaintiff contends that Attorney Krause's opinion letter was a conflict of interest between his original client, Jerry Schwab, and Huntington. Plaintiff also contends that Huntington wrongly withheld approval of the loan because provisions of the Schwab Trust insulated Huntington from liability.

As previously stated, Huntington was also a secured creditor of Schwab Ind.

### C. The Creditor Trust and Creditor Trustee

On December 15, 2010, the court confirmation Debtors' liquidation plan ("Plan"). Debtors' remaining assets were transferred to the Creditor Trust. (First Am. Plan ¶ 1.27, Main Case ECF No. 698) These assets specifically included Avoidance Action and Miscellaneous Causes of Action, as described in the Plan, order confirming the Plan, and related documents. John B. Pidcock was appointed Creditor Trustee.

The Creditor Trustee continues to pursue assets on behalf of the Creditor Trust. Other adversaries are pending that may result in additional monies to distribute to unsecured creditors.

## II.    Bankruptcy Litigation

The bankruptcy case fostered numerous lawsuits, both by and against the Schwabs. Relevant litigation includes the following:

### A. <u>KeyBank N.A. v. Huntington National Bank</u>, Adv. Case. No. 10-6097

KeyBank, N.A. acted as an agent for a group of secured lenders in the bankruptcy case and filed this adversary proceeding to obtain Schwab Ind.'s interest in the Schwab Trust assets under the split dollar agreement. Through crossclaims, counterclaims and the like, the Schwabs and others were joined in the action. Following a withdrawal of the reference, the parties entered into a settlement on most of the claims. Huntington obtained summary judgment against David Schwab on his counterclaims and the matter is concluded.

### B. <u>John B. Pidcock v. Jerry A. Schwab, et al.</u>, Adv. Case No. 12-6022

In this adversary, the Creditor Trustee is suing various members of the Schwab family for alleged breaches of fiduciary duties owed to the estate and creditors, as well as to recover preferences and fraudulent transfers. As outlined above, in March 2014, the Creditor Trustee reached a settlement of some of the claims against David A. Schwab and agreed to reissue

4

Schwab Ind. stock to him in exchange for $100,000. The balance of the case is still pending.

### C. David A. Schwab v. Lawrence E. Oscar, et al., Adv. Case No. 12-6035

Schwab family members, individually as shareholders and derivatively on behalf of Schwab Ind., sued bankruptcy counsel for legal malpractice and other claims. In an opinion dated January 22, 2014, the court summarized its findings that the plaintiffs lacked standing and the claims were barred by res judicata:

> First, the court found that Plaintiffs lacked standing to bring the lawsuit because they identified no specific harm to themselves, separate and apart from any injury to the corporation, that created individual shareholder standing. Additionally, the court found that Plaintiffs had failed to obtain authority to pursue derivative claims on behalf of the corporation, those claims now belonging to the Creditor Trustee/estate. Finally, the court found the claims were barred by res judicata because they should have been raised at the time the court decided Defendants' fee applications.

(Memo. of Opinion p. 2, Adv. Case No. 12-6035 ECF No. 73) The Bankruptcy Appellate Panel recently upheld this court's denial of the plaintiffs' motion for relief from judgment that dismissed the claims in September, 2012. (Final Order, Adv. Case No. 12-6035 ECF No. 88) There is direct correlation between this lawsuit and the removed action.

### D. Pidcock v. Laurence V. Goddard, et al., Adv. Case No. 14-6016

Creditor Trustee's claims against Debtors' bankruptcy restructuring/financial advisors include breach of fiduciary duty. This adversary is ongoing.

### E. Schwab Industries, Inc. v. The Huntington National Bank, Adv. Case Nos. 14-6024 and 14-6025

On May 5, 2014, Schwab Ind. filed a lawsuit in the Court of Common Pleas for Cuyahoga County, Ohio against Huntington, Hahn Loeser & Parks ("HLP"), and HLP attorneys Lawrence Oscar and Andrew Krause. The lawsuit seeks more than $350,000,000.00 in damages against Defendants, primarily based on alleged conflicts of interest by Huntington and HLP. The five counts are summarized as:

Count I: Huntington, as trustee of the Schwab Trust, fraudulently/tortiously interfered with the business relationship between the Schwab Trust and Schwab Ind. in its refusal to authorize the loan from the Schwab Trust to Schwab Ind.

Count II: Huntington, as a creditor of Schwab Ind., violated its duty of good faith to Schwab Ind. by, in its capacity as trustee of the Schwab Trust, failing to

5

|          |                                                                                              |
|----------|----------------------------------------------------------------------------------------------|
|          | authorize the loan to Schwab Ind.                                                            |
| Count III: | Huntington, as trustee of the Schwab Trust, breached its duties to Schwab Ind. under the split dollar agreement. |
| Count IV: | HLP engaged in fraud/civil conspiracy by failing to advise Schwab Ind./Debtors of its prior representation of Huntington and the issuance of the opinion to Huntington as trustee of the Schwab Trust. |
| Count V: | HLP commited legal malpractice for the same reasons set forth in Count IV.                   |

These matters are ongoing.

## DISCUSSION

On June 3, 2014, Defendant Huntington removed this action to the bankruptcy court pursuant to 28 U.S.C. § 1452(a) and Federal Rule of Bankruptcy Procedure 9027. It is clear that Plaintiff challenges removal although the basis for the challenge is ill-defined. Plaintiff filed a motion that covers removal, withdrawal of the reference, and remand to state court, citing Bankruptcy Rule 7012 and United States Code provisions 28 U.S.C. §§ 157 and 1334(c)(1) and (2). At no point does Plaintiff reference the removal statute, 28 U.S.C. § 1452, nor does Plaintiff directly argue abstention under §1334(c). The court will, however, address each of these.

### I. Removal under 28 U.S.C. § 1452

As stated above, Defendant removed the case under 28 U.S.C. § 1452. The statute provides that removal is appropriate only if the court to which the action is removed "has jurisdiction of such claim or cause of action under section 1334 of this title." The party seeking removal must demonstrate the jurisdictional foundation. City of St. Louis v. Velsicol Chem. Corp., 708 F.Supp.2d 632, 650 (E.D. Mich. 2010) (citing Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999)). Since the thrust of Plaintiff's motion is that the court lacks jurisdiction over state law, non-core claims that arose postpetition, the court mainly will focus on this area.

Original and exclusive jurisdiction of "all cases under title 11" resides with district courts. 28 U.S.C. § 1334(a).[4] This refers to the action commenced with the filing of a bankruptcy petition, the bankruptcy case itself. Robinson v. Michigan Consol. Gas Co. Inc., 918 F.2d 579, 583 (6th Cir. 1990). Since the removed action is not the actual bankruptcy case, the court does not have both original and exclusive jurisdiction. Instead, its grant of authority is couched in § 1334(b), which tempers a district court's jurisdiction over "civil proceedings arising under title 11, or arising in or related to cases under title 11" by retaining original, but limiting the court's exclusive hold on, jurisdiction. Thus, the court must determine whether it has at least original jurisdiction over Plaintiff's claims for malpractice and breach of fiduciary duty

---
4 A district court may refer its jurisdiction to a bankruptcy court under 28 U.S.C. § 157(a). The District Court for the Northern District of Ohio exercised its referral authority in General Order 2012-7 dated April 4, 2012.

because they are either civil proceedings that arise under, arise in or are related to a case under title 11. Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co., Inc.), 930 F.2d 1132 (6th Cir. 1991). It is not necessary to analyze each of the remaining three categories of proceedings because they "operate conjunctively to define the scope of jurisdiction." Wolverine Radio. at 1141 (citing In re Wood, 825 F.2d 90, 92 (5th Cir. 1987)). Traditionally, the Sixth Circuit only requires a court to determine whether a proceeding is related to the bankruptcy case. Id. This hinges on

> whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts on the handling and administration of the bankruptcy estate.

Wolverine Radio at 1142 (citing In re Pacor, Inc., 743 F.2d 984, 994 (3rd Cir. 1984)) (emphasis original, citations omitted)).

This test, however, does not fit every chapter 11 scenario. As the Sixth Circuit noted, 'at the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred." Papas v. Buchwald Capital Advisors, LLC (In re Greektown Holdings, LLC), 728 F.3d 567, 577-78 (6th Cir. 2013); *see also* McKinstry v. Sergent, 442. B.R. 567 (E.D. Ky. 2011). In support, the court cited two opposing post-confirmation appellate court decisions: the first, a reorganization case, suggested a contraction of jurisdiction, while the other, a liquidation case, found no curtailment. Greektown Holdings, 728 F.3d 567, 577-78 (citing Resorts Int'l Fin., Inc. v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.) 372 F.3d 154, 165 (3rd Cir. 2004); Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.), 410 F.3d 100, 106-07 (1st Cir. 2005)). This court views this as an exhortation to carefully consider the facts and posture of a post-confirmation case in determining the breadth of jurisdiction.

In Greektown Holdings, the Sixth Circuit did not stray far from the traditional test. There, the trustee of the litigation trust filed a motion to approve a settlement with an alleged fraudulent transferee. Part of the settlement included a bar order operating as a release of liability for the transferee, to which third parties objected. On the facts of Greektown Holdings, the Sixth Circuit said that the district court should have considered whether it had jurisdiction "to enjoin the potential claims encompassed by the bar order." 728 F.3d. at 577 (citation omitted). To do so, it should have considered (1) whether the outcome, as opposed to assertion, of the barred claims, would affect the estate, and (2) if there was a nexus between those claims and the bankruptcy case. Id. at 578. The case was remanded for further consideration.

The claims in Greektown Holdings are much more remote than the claims presented here. Greektown Holdings involved non-debtor releases of claims against an alleged fraudulent

7

transferee. The court was not looking at the debtor, or its reincarnation, nor were professionals or creditors of the estate involved. Here, a proximal nexus exists between Plaintiff's claims and the bankruptcy case. Not only does the action involve intrinsic parties to the bankruptcy case, but the claims are also directly connected to it. This is adeptly shown in the fact that this action is a re-hash of litigation that has been presented, and rejected, by this court. In the previous attempts, Plaintiff submitted, without argument, to this court's jurisdiction. The court profoundly believes that it has, at a minimum, related-to jurisdiction over this proceeding, as explained in further detail below.

> **A. The claims are prepetition claims that belonged to the estate**

Plaintiff acknowledges that prepetition causes of action belong to the estate but argues that actions that accrue postpetition are not property of the estate. According to Plaintiff, since it obtained knowledge of the actions in May 2013, the actions accrued postpetition and therefore are not property of the estate. The court does not agree that these causes of action are postpetition in nature, nor does it agree that the estate of a chapter 11 debtor in possession is strictly limited to prepetition assets. 11 U.S.C. § 541(a)(7); Parker v. Goodman (In re Parker), 499 F.3d 616 (6th Cir. 2007).

Contrary to Plaintiff's position, accrual of the claim is not the determining benchmark. The Sixth Circuit recently opined that "[s]tate substantive law determines the 'nature and extent' of causes of action, *see* Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 461 (6th Cir. 2013), but federal bankruptcy law dictates when that property interest becomes property of the estate for purposes of § 541, *see* In re Terwilliger's Catering Plus, Inc., 911 F.2d 1168, 1172 (6th Cir. 1990)." Underhill v. Huntington Nat'l Bank (In re Underhill), 2014 WL 4435977, * 2 (6th Cir. 2014) (reporter citation not yet available). A key factor in determining when an action becomes property of the estate looks at the existence of a prepetition violation or injury. Id. (citations omitted).

Here, the alleged violations and injuries occurred either prepetition or contemporaneously with the filing of the bankruptcy petition. The gravamen of Plaintiff's complaints against Huntington concern its failure to make the loan to Schwab Ind. as directed by the Schwab Trust advisory board, which occurred prior to the bankruptcy filing. Plaintiff also asserts Huntington owed it a duty of good faith as a creditor, which it breached by acting, as trustee of the Schwab Trust, against Schwab Ind.'s interest. Again, these violations occurred prepetition, as did the resulting injury, the need to seek bankruptcy protection. Thus, the claims belonged to the bankruptcy estate.

Similarly, Plaintiff's counts against HLP show that the violation and injury occurred either before or contemporaneously with the bankruptcy filing. According to Plaintiff, HLP created a conflict of interest in using the attorney who represented Jerry Schwab in creating the trust to provide a legal opinion for Huntington concerning permissible actions under the Schwab Trust. Then, HLP failed to disclose its representation of Huntington to Schwab Ind., thereby creating another conflict. In all instances, the violations and injuries resulted prepetition and

8

therefore the claims constituted property of the estate.

Plaintiff urges the court to find that the claims accrued in May 2013, the date it allegedly learned of the conflicts. Even if Plaintiff were correct, the court has discounted this argument. As Plaintiff points out, fraud accrues "when the injured party discovers the fraud 'or when, in the exercise of reasonable diligence, the fraud should have been discovered.'" (Opposition to Removal, p. 14, Adv. ECF No. 25 (citations omitted)) The court is convinced that Debtor and/or the individual Schwab family members knew, or should have known, of the conflict much earlier than the May 2013 date continuously alleged by Plaintiff. *See* Schwab v. Oscar (In re SII Liquidation Co.), 2014 WL 232113, * 5 (Bankr. N.D. Ohio 2014) (unpublished). Consequently, even if accrual were the benchmark, the claims are still prepetition claims. The court also rejects any suggestion that the statute of limitations of the claims impacts accrual of the claims. For these reasons, the court finds that the claims raised by Plaintiff are prepetition claims, not postpetition claims, and therefore constituted property of the estate. Consequently, this proceeding, at a minimum, relates to the bankruptcy case. Celotex Corp. v. Edwards, 514 U.S. 300, 308 fn. 5 (1995) ("proceedings 'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541 . . . ." See Collier on Bankruptcy ¶ 3.01[1][c][iv], p. 3-28 (15th ed. 1994)).

### B. Malpractice claims against a debtor's professionals are core proceedings because they arise in or under a title 11 case

Even without the above, this court previously recognized the prevailing position among circuit courts that malpractice actions against bankruptcy professionals are core proceedings that arise in or under a bankruptcy case, providing a clear basis for a court's exercise of jurisdiction. Schwab v. Oscar (In re SII Liquidation Co.), 2012 WL 4327055, * 3 (September 20, 2012) (unpublished); *see also* Schultze v. Chandler, 765 F.3d 945 (9th Cir. 2014); Frazin v. Haynes & Boone, LLP (In re Frazin), 732 F.3d 313, 322 (5th Cir. 2013) Baker v. Simpson, 613 F.3d 346, 350 (2nd Cir. 2010); Grausz v. Englander, 321 F.3ed 467, 471 (4th Cir. 2003). As a result, the court has jurisdiction to hear these claims.

### C. Schwab Ind. does not own the claims

Plaintiff clearly believes that the purchase of the stock from Creditor Trust resulted in a purchase of these causes of action. These claims were transferred to the Creditor Trust and therefore they did not re-vest in Debtors at confirmation. 11 U.S.C. § 1141(b). Since Debtors no longer owned the causes of action, the transfer of Debtors' stock did not include these claims.

As stated above, the claims were prepetition property of the bankruptcy estate. The bulk of the assets of the estate were sold in May 2010 to OldCastle Materials, Inc. and Land Resource Holdings, LLC. Debtors sold the purchasers rights to "all Claims against third persons . . . with respect to the Business." (Asset Purchase Agreement ¶ 2.1(o), Adv. Case. No. 14-6016 ECF No. 24-1) The "business" was defined as the "produc[tion], supply and distribut[ion of] ready-mix concrete, concrete block, cement and related supplies to commercial, governmental and residential contractors through Northeast Ohio and Southwest Florida and operat[ion of] a deep-

9

water port at Port-Manatee Florida." (Id. at Recital B) Since these claims were not transferred, they remained part of Debtors' estate.

Debtors confirmed a Plan of liquidation in December 2010. Under the terms of the plan, the Debtors' estates were liquidated. Causes of action against Potential Insider Defendants were reserved for the Creditor Trust, including those identified post-confirmation. (First Am. Plan of Liquidation ¶ I, Main Case ECF 698) Following confirmation, the assets of the estates, including Avoidance and Miscellaneous causes of action, like claims of the nature asserted here, were transferred to the Creditor Trust. (Id. at ¶¶ 18, 43, 44) Paragraph nineteen further provided that "all property held for distribution pursuant to the Plan shall be held by the Creditor Trust solely in trust for holders [of various claims] and *shall not be deemed property of the Debtors*." (emphasis added) The Plan anticipated the wind-down and dissolution of the Debtors. (Id. at ¶ 24) Debtors no longer owned these assets. Acquiring the stock in the liquidated companies, therefore, did not transfer any ownership interest in the claims to Plaintiff. It merely assigned stock interests in the liquidated Debtors to David Schwab.

### D. Plaintiff did not follow the removal procedure

The removal process is governed by Federal Rule of Bankruptcy Procedure 9027. In accordance with Rule 9027(b), Defendant Huntington provided notice of the removal to Plaintiff, served on June 3, 2014. Rule 9027(e) establishes the procedures for a case after it is removed. Rule 9027(e)(3) requires

> Any party who has filed a pleading in connection with the removed claim or cause of action, other than the party filing the notice of removal, shall file a statement admitting or denying any allegation in the notice of removal that upon removal of the claim or cause of action the proceeding is core or non-core. If the statement alleges that the proceeding is non-core, it shall state that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. A statement required by this paragraph shall be signed pursuant to Rule 9011 and shall be filed not later than 14 days after the filing of the notice of removal. Any party who files a statement pursuant to this paragraph shall mail a copy to every other party to the removed claim or cause of action.

Plaintiff did not comply with Rule 9027(e). However, because courts recognize that no penalty is prescribed in the rule, *see* In re Buran, 351 B.R. 300 (W.D.N.Y. 2006); Wetzel v. Lumbermens Mut. Cas. Co., 324 B.R. 333 (S.D. Ind. 2005), and neither defendant raised the issue, the court does not find the lack of compliance to be a waiver of the right to argue that the claims are non-core.

E.  **Equitable remand**

To the extent that Plaintiff's filing could somehow be perceived as arguing for equitable remand under 28 U.S.C. § 1452(b), the court rejects it.   Courts find that the considerations for permissive abstention under § 1334(c)(1) and equitable remand under § 1452(b) are largely coterminous.   Mann v. Waste Mgmt. of Ohio, Inc., 253 B.R. 211 (N.D. Ohio 2000); Cohen v. Schonsheck (In re Hagen), 2014 WL 1153728 (E.D. Mich. 2014); MD Acquisition, LLC v. Myers, 2009 WL 466383 (S.D. Ohio 2009).   Equitable grounds that may support remand include:

> 1)  the effect or lack of effect on the efficient administration of the [bankruptcy] estate if a court abstains; 2) the extent to which state law issues predominate over bankruptcy issues; 3) the difficulty or unsettled nature of the applicable state law; 4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; 5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; 6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; 7) the substance rather than the form of an asserted "core" proceeding; 8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; 9) the burden of [the] court's docket; 10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; 11) the existence of a right to a jury trial; 12) the presence in the proceeding of nondebtor parties; and 13) any unusual or significant factors [such as judicial economy, prejudice to the involuntarily removed party, or comity considerations].

MD Acquisition, 2009 WL 466383, * 5-6 (citing Nat'l Century Fin. Enterp., Inc. Investment Litigation, 323 F.Supp.2d 861, 885 (S.D. Ohio 2004)).

The court has previously discussed its position concerning the relationship to the claims and the bankruptcy case.   The strongest argument is that the filing in state court appears to be forum shopping by Plaintiff.   The shareholders of Plaintiff mounted these claims in this court and were rejected.   The complaint shows an indifference or disregard to previous findings.   Unchecked, this will be a significant prejudice to Defendants.   Although this court does not question the state court's ability to decide the claims, this court has particular knowledge of the proceedings in the bankruptcy court, as well as familiarity with a corps of facts underlying the claims.   These factors demonstrate equities in favor of the removal.

II. **Withdrawal of reference**

In its motion, Plaintiff mentions withdrawing the reference to allow this case to be

11

heard by the Cuyahoga County Common Pleas Court.   A withdrawal of the reference would send the case "back" to the United States District Court for the Northern District of Ohio ("District Court"), which conferred its jurisdiction over title 11 matters to the bankruptcy judges in General Order 2012-7 (April 4, 2012) under the authority of 28 U.S.C. § 157(a).   A review of Plaintiff's arguments convinces the court that Plaintiff seeks a return of this case to state court, which is a remand, not a withdrawal of the reference.   Therefore the court will not consider this argument.

### III.     Remand under § 1334

#### A. Permissive abstention

Under § 1334(c)(1), a district court may permissively abstain from hearing a civil proceeding covered by § 1334(b) "in the interest of justice, or in the interest of comity with State courts or respect for State law."   The factors are set forth in section I(c), *supra.*   Ultimately, the court's decision is discretionary.   In re Southwest Sports Ctr., Inc., 2011 WL 4002559, *4 (Bankr. N.D. Ohio 2011) (unpublished) (citing In re Underwood, 229 B.R. 471, 476 (Bankr. S.D. Ohio 2003)).   Plaintiff, as movant, must establish that permissive abstention is warranted.   CPC Livestock, LLC v. Fifth Third Bank, Inc., 495 B.R. 332 (W.D. Ky. 2013) (citation omitted); In re York, 291 B.R. 806, 816 (Bankr. E.D. Tenn. 2003).

Plaintiff did not specifically identify these factors, let alone make arguments for or against.   Consequently, the court finds that Plaintiff did not meet its burden of proof.   Even if Plaintiff had made the requisite showing, the court finds removal is more appropriate for the same reasons identified in its discussion of equitable remand.

#### A. Mandatory abstention

Section § 1334(c)(2) mandates abstention

> in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section . . . [when] an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

"For mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding."   Lowenbraun v. Canary (In re Lowenbraun), 453 F.3d 314,

12

320 (6th Cir. 2006) (citing In re Dow Corning Corp., 86 F.3d 482, 497 (6th Cir. 1996)).  The movant bears the burden of proof on the elements of mandatory abstention.  Parrett v. Bank One, N.A. (In re Nat'l Century Fin. Enter., Inc.), 323 F.Supp.2d 861, 881 (S.D. Ohio 2004); Morris Black & Sons, Inc. v. 23S23 Constr. (In re Carriage House Condos. L.P.), 415 B.R. 133, 144 (Bankr. E.D. Pa. 2009) (citation omitted).  In this case, that burden would rest with Plaintiff.  Plaintiff failed to discuss at least two of these elements, including whether there was federal jurisdiction outside of the bankruptcy case and whether the state court was capable of a timely adjudication.  Consequently, Plaintiff has not demonstrated this court is obligated to remand this case to state court under 28 U.S.C. § 1334(c)(2).

## CONCLUSION

Defendants' removal of this matter to this court appears sound.  The claims are related to the bankruptcy case, giving the court jurisdiction under 28 U.S.C. § 1334(b).  Plaintiff has not demonstrated that the court is mandated to return this case to state court, nor shown any sound reason for this court to permissively abstain or equitably remand the action.

An order denying Plaintiff's motion to remand will be entered forthwith.

#   #   #

**Service List:**

Charles V. Longo
Matthew D. Greenwell
25550 Chagrin Blvd., Ste 320
Beachwood, OH 44122

Andrew S. Nicoll
Porter Wright Morris & Arthur, LLP
41 S. High Street, Suite 3100
Columbus, OH 43215

Karen Swanson Haan
Michael A. VanNiel
Daniel Rubin Warren
Thomas D. Warren
Baker & Hostetler, LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, OH 44114-3482

Jack B Cooper
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213