**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 03:58 PM September 21, 2015**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SII LIQUIDATION COMPANY, | ) | CASE NO. 10-60702 |
| | ) | |
| Debtors. | ) | CONSOL. ADV. NO. 14-6024 |
| _____ | ) | |
| SCHWAB INDUSTRIES, INC., | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF DECISION** |
| THE HUNTINGTON NATIONAL | ) | **(NOT INTENDED FOR** |
| BANK, et al., | ) | **PUBLICATION)** |
| | ) | |
| Defendants. | ) | |

    Two motions to dismiss are pending, one filed by Defendant The Huntington National Bank ("Huntington") and one filed by Defendants Hahn Loeser & Parks LLP ("HLP"), Andrew Krause ("Krause") and Lawrence E. Oscar ("Oscar") (collectively "HLP Defendants"). Plaintiff opposes both motions.

    The bankruptcy court's jurisdiction is premised in 28 U.S.C. § 1334 and the general order of reference, Order 2012-7 dated April 4, 2012, entered by the United States District Court for the Northern District of Ohio. Jurisdiction of this adversary was also discussed in a previous decision. Schwab Ind., Inc. v. The Huntington Nat'l Bank (In re SII Liquidation Co.), Case No.

1

10-60702, Adv. No. 14-6024, (Bankr. N.D. Ohio 2014). Venue is proper under 28 U.S.C. § 1409.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

# FACTS[1]

Schwab Industries, Inc. ("Schwab Inc.") was formed more than forty years ago by Jerry Schwab. Schwab Inc. was an Ohio corporation headquartered in Dover, Ohio with assets, including an orange grove with limestone mining potential and a deep water port, located in Florida and Ohio. With its affiliates,[2] Medina Cartage Co., Medina Supply Company, Quality Block & Supply, Inc., O.I.S. Tire, Inc., Twin Cities Concrete Company, Schwab Ready-Mix, Inc., Schwab Materials, Inc., and Eastern Cement Corp., Schwab Inc. "produce[d], suppl[ied] and distribute[d] ready-mix concrete, concrete block, cement and related supplies to commercial, governmental and residential contractors throughout Northeast Ohio and Southwest Florida." (M. Joint. Admin. ¶ 4, Main Case ECF No. 6) In 2010, Schwab Inc. was owned by four family members: Jerry Schwab; his wife, Donna Schwab; and their two children, Mary Lynn Schwab[3] and David Schwab.

By the mid-2000s, Schwab Inc. had revenues in the hundreds of millions of dollars but seasonal fluctuations in revenue resulted in the need for Schwab Inc. to obtain capital infusions during its off-season. "Plaintiff traditionally obtained from the Secured Lenders a loan in the approximate amount of $2,000,000.00 called an "over advance" which provided capital to allow Plaintiff to meet its financial obligations during the inclement winter months when the construction industry was dormant." (Cuyahoga Cty. Complaint ¶ 26, Adv. Case ECF No. 1-1) Defendant Huntington National Bank was a secured lender of Schwab Inc.

As a result of the Great Recession, and its severe impact on the real estate industry, sales declined by nearly fifty percent between fiscal years 2007 and 2009, from approximately $300,000,000 to $105,000,000. "The decrease in sales negatively impact[ed . . .] working capital availability and cash flows." (Id. at ¶ 19) By its own admission, Schwab Inc. experienced a cash flow problem in the winter of 2008-2009. Schwab Inc. started marketing the business for sale in 2008. At one point, Schwab Inc. received a letter of interest from Oldcastle Materials, Inc. citing a "total enterprise value of $300,000,000."[4] (Id., Ex. E) In 2009, Plaintiff was unable to obtain the off-season loan from its secured lenders.

Schwab Inc. attempted to cure its cash flow problem by seeking funds from a trust

---

1 These facts are primarily a restatement of the facts set forth in a Memorandum of Opinion in this adversary dated October 24, 2014. (ECF No. 36)
2 Schwab Inc. was the parent holding company and either directly or indirectly owned all equity interests in the affiliated companies.
3 Identified as Mary Lynn Hites in the complaint, Mary Lynn Schwab's answer states this is an improper designation. (Ans., ECF No. 10)
4 It is unclear what transpired after the letter was issued.

("Trust") established in 1992 by Jerry Schwab for the benefit of his children, David and Mary Lynn. Defendant Andrew Krause ("Krause"), then of Myers Krause and Stevens, provided legal assistance in the formation of the trust. The trust res consisted of life insurance policies on the lives of Jerry Schwab and his wife, Donna S. Schwab. Pursuant to a split dollar agreement, the life insurance premiums were paid by Schwab Inc. In exchange for the premium payments, Schwab Inc. obtained collateral security interests in the premiums contributed to the Trust. Huntington is the trustee ("Trustee") of the trust as successor to Huntington Trust Company of Florida NA.

An advisory board has authority to make decisions for the Schwab Trust. In 2009, the advisory board authorized a loan of $2,000,000, and up to $3,000,000, to provide working capital to Schwab Inc. from trust assets. Huntington, as trustee of the Schwab Trust, sought a legal opinion on the propriety of making the loan. The opinion, which advised against the loan, came from Attorney Krause, now employed with HLP. Plaintiff contends that Attorney Krause's opinion letter was a conflict of interest between his original client, Jerry Schwab, and Huntington. Plaintiff also contends that Huntington wrongly withheld approval of the loan because provisions of the Schwab Trust insulated Huntington from liability. Additionally, Plaintiff alleges that HLP failed to adequately disclose its conflict with Huntington to Schwab Inc. prior to the bankruptcy filing.

Schwab Inc. alleges that its inability to secure the loan was a contributing factor in its decision to file bankruptcy. In January 2010, Schwab Inc.'s primary secured lenders declared a default. On February 28, 2010, Schwab Inc., along with related entities (collectively "Debtors"), filed chapter 11 bankruptcy petitions.[5] Debtors were represented by HLP, as main bankruptcy counsel, and Brouse McDowell LPA, as conflicts counsel. Lead bankruptcy counsel was Lawrence Oscar.

After filing bankruptcy, Debtors were unable to obtain post-petition financing to continue operations. As a result, Debtors sold substantially all of their assets in May 2010. Later that year, Debtors confirmed an amended plan of liquidation ("Plan") and Debtors' remaining assets were transferred to a Creditor Trust. (First Am. Plan ¶ 1.27, Main Case ECF No. 698) These assets specifically included Avoidance Action and Miscellaneous Causes of Action, as described in the Plan and related documents. John B. Pidcock was appointed Creditor Trustee. The Creditor Trustee pursued assets on behalf of the Creditor Trust, including adversary actions.

Under paragraph twenty-six of the confirmation order, Debtors became known as SII Liquidation Company and their remaining trade names were transferred to OldCastle Materials, Inc., the May 2010 purchaser of the bulk of the assets. (Findings of Fact ¶¶ 26, 28; Main Case ECF No. 698). Further, the amended plan of liquidation, confirmed on December 15, 2010, provided for the wind-down and dissolution of Debtors and retirement of the interests of the equity security holders. (Am. Plan ¶¶ 5.7, 7.5, Main Case ECF No. 698-1)

---

[5] As of the confirmation date, the debtors became known as SII Liquidation Company. (Confirmation Order ¶ 26, Main Case ECF No. 698)

In March 2014, the Creditor Trustee, John B. Pidcock, entered into a settlement agreement with David Schwab, a former equity stakeholder in Schwab Inc. that settled some of the Creditor Trust's claims against David Schwab and provided for the reissuance and sale of Schwab Inc.'s stock for $100,000. The plaintiff ("Plaintiff") in this action is the post-liquidation sale, post-confirmation entity.

On May 5, 2014, Plaintiff filed a case against Defendants in the Cuyahoga County Court of Common Pleas. The complaint contained five counts. Count I alleges that Huntington committed fraud and tortiously interfered with the relationship between Trust and Schwab Inc. Count II alleges that Huntington breached its duty of good faith as a secured lender of Schwab Inc. Count III is for Huntington's alleged breach of contract, specifically breach of the split dollar agreement. Count IV contains allegations against Defendant HLP for a conflict of interest, fraud and civil conspiracy. Count V is a malpractice claim against HLP and Oscar.

The state court lawsuit is not the first iteration of the malpractice claims in this court. On May 10, 2012, Jerry Schwab, Donna Schwab and David Schwab filed an adversary complaint alleging legal malpractice by HLP and Oscar.[6] Schwab v. Oscar (In re SII Liquidation Co.), Case No. 10-60702, Adv. No. 12-6035 (Bankr. N.D. Ohio 2012). This court dismissed the complaint, finding that the plaintiffs (the individual Schwabs) lacked standing and the claims were barred by res judicata. The plaintiffs later sought relief from that judgment, which the court denied. (Order Denying M. for Relief from Judg., ECF No. 74) The denial was upheld by the Bankruptcy Appellate Panel. Schwab v. Oscar (In re SII Liquidation Co.), Case 14-8009 (B.A.P. 6th Cir. Sept. 5, 2014).

## DISCUSSION

All defendants assert Plaintiff lacks standing, leaving this court without subject matter jurisdiction over the claims. The Supreme Court described standing as the question of "whether the litigant is entitled to have the court decide the merits of the dispute or the particular issues," also framed as "justiciability." Warth v. Seldin, 422 U.S. 490, 498 (1975). To maintain this action, Plaintiff must show both constitutional standing under Article III and prudential standing. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377 (2014). Constitutional standing is predicated on proof of three elements:

> First, the plaintiff must have suffered an "injury in fact"—
> an invasion of a legally protected interest which is (a) concrete
> and particularized . . . and (b) "actual or imminent, not 'conjec-
> tural' or 'hypothetical . . . .' Second, there must be a causal
> connection between the injury and the conduct complained of—
> the injury has to be "fairly . . . trace[able] to the challenged
> action of the defendant, and not . . . th[e] result [of] the inde-
> pendent action of some third party not before the court . . . .

---

6 The adversary complaint did not contain allegations or claims against Krause, instead focusing on allegations of legal malpractice in HLP's bankruptcy representation.

4

> Third, it must be "likely," as opposed to merely "speculative,"
> that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) (all citations omitted). Prudential standing addresses the 'judicially self-imposed limits on the exercise of federal jurisdiction.' U.S. v. Windsor, 133 S.Ct. 2675 (2013) (other citations omitted). Plaintiff bears the burden to prove its standing. Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc., 287 F.3d 568 (6th Cir. 2002) (citation omitted).

To determine the parameters of review, the court must determine whether the standing challenge is a facial or factual attack on jurisdiction. Cartwright v. Garner, 751 F.3d 752 (6th Cir. 2014).

> A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis. Id. A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. Id. Plaintiff bears the burden of establishing that subject matter jurisdiction exists. DLX, Inc. v. Commonwealth of Kentucky, 381 F.3d 511, 516 (6th Cir.2004).

Cartwright, 751 at 760 (citing U.S. v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)).

This is a factual challenge, leaving the court free to consider and weigh evidence beyond the pleadings. In accordance with Federal Rule of Evidence 201, the court takes note of the contents of the dockets in the main bankruptcy case, all related adversary proceedings, and the related appeals.

To address standing, it is necessary to understand who Plaintiff is. Although it was originally the lead Debtor in the underlying case, it now bears little resemblance to that entity. First, the bulk of its assets were sold to OldCastle Materials, Inc. and Resource Land Holdings on May 28, 2010. (Order Auth. Sale, Main Case ECF. No. 455) The remaining assets of Debtors and their estates were transferred to the Creditor Trust. (Order Confirming First Am. Jt. Plan at p. 20, ¶ 18, Main Case 10-60702, ECF No. 698) Under the confirmed plan, the Creditor Trustee was to wind-down Debtors' affairs, resulting in involuntary dissolution. (Order Confirming First Am. Jt. Plan, p. 24, ¶ 24, Main Case No. 10-60702, ECF No. 698)[7] Moreover,

---

7 The court questions use of the name Schwab Industries. Under the confirmation order, Debtors' name was changed to "SII Liquidation Company," which was to be registered with the appropriate secretary of state, and all remaining trade names transferred to OldCastle, the purchaser of the business assets. (Order Confirming First Am.

Plaintiff's stock is retired. Recital E of the Share Purchase Agreement states that "all of the Company's stock was retired as that term is defined under Ohio general corporation law." (M. for Order Approving Settlement, Ex. B, ECF No. 142 in Adv. No. 12-6022); *see also* O.R.C. § 1701.01(L) and 1701.36. Pursuing this action may counter the intent of the confirmed plan. With this backdrop, the court will consider each motion independently.

### I. The Huntington Motion to Dismiss

Plaintiff brings three counts against Defendant Huntington: (1) fraud/tortious interference with business relationship, (2) breach of duty of good faith, and (3) breach of contract under the split dollar agreement. Defendant moves to dismiss these claims, arguing that Plaintiff lacks standing because the claims belong to the Creditor Trust or, alternatively, that the claims were released. Plaintiff disagrees.

### A. Standing

Huntington seeks dismissal of counts one, two and three under Federal Rule of Civil Procedure 12(b)(1), adopted into bankruptcy practice by Bankruptcy Rule 7012. These tort claims arise from Huntington's refusal, as trustee of the Schwab Trust, to authorize the loan approved by the Trust's advisory committee in 2009. When presented with the request, Huntington sought a legal opinion and used Attorney Krause, the attorney who established the Trust. In a letter dated August 19, 2009, he advised Huntington, as Trustee, against the loan. (Complaint, Ex. H, ECF No 1-1) Huntington refused the loan, which Plaintiff alleges caused it to seek bankruptcy protection in February 2010. Plaintiff contends that Huntington's refusal was founded in self-interest.

Huntington's primary argument is that Plaintiff does not own these claims and therefore lacks standing to pursue this action. Plaintiff contends that the claims are postpetition claims that were not property of the estate and therefore were not transferred to the Creditor Trust. Once again, the court must reject Plaintiff's position, as it did when it denied Plaintiff's motion to remand. (Memo. of Op., ECF No. 36). Plaintiff was clearly aware of Huntington's denial of the loan in 2009, leading to the inescapable conclusion that both the violation and injury occurred prepetition.

Even if the court were to accept Plaintiff's argument, it does not change the outcome. The Amended Plan defined Causes of Action broadly: "all claims and causes of action now owned *or hereafter acquired by the Debtors*, whether arising under any contract, the Bankruptcy Code, or other federal or state law . . . ." (First Am. Plan Jt. Plan ¶ 1.17, Main Case No. 10-60702, ECF No. 655) (emphasis added) As this court previously determined, only business-related causes of action were transferred to the buyers. <u>Pidcock v. Goddard (In re SII Liquidation Co.)</u>, October 17, 2014 (Bankr. N.D. Ohio 2014). Under paragraph 1.27 of the Amended Plan, Avoidance and Miscellaneous Causes of Action, defined in paragraph 1.48 as "all Causes of Action other than Avoidance Actions," were transferred to the Creditor Trust.

---

Jt. Plan, p. 25, ¶ 26, Main Case No. 10-60702, ECF NO. 698)

This broad transfer of assets was in furtherance of the complete liquidation of Debtors. Assets not transferred through the asset sale were to be transferred to the Creditor Trust for the benefit of creditors. Following disposition of all assets, Debtors were to be dissolved. (Am. Plan ¶¶ 5.7, 7.5, Main Case ECF No. 698-1) Consequently, no prepetition or postpetition property remained vested with Debtors.

Plaintiff mistakenly contends that the settlement and share purchase agreement in the Pidcock v. Schwab action included the tort claims at issue. The court rejects this position. The Share Purchase Agreement stated "[t]he Purchaser's sole rights as holder of the Stock shall be to effectuate actions as to *property held by the Debtors,* and to receive a distribution of equity in the event that all beneficiaries of the creditor Trust receive payment in full on account of their allowed claims . . . ." (Order Approving Settlement, Ex. B, Adv. No. 12-6022, ECF No. 152) (emphasis added) The claims were not property of the Debtors, they were property of the Creditor Trust. The claims were not transferred from the Creditor Trust and thus do not belong to Plaintiff. *Compare* Church Joint Venture v. Blasingame (In re Blasingame), 472 B.R. 754 (creditor who purchased claims from the bankruptcy trustee had standing). Plaintiff was a party to the First Amended Plan and therefore is bound by its terms.

Plaintiff suggests that paragraph 7.18 of the First Amended Plan sanctions its prosecution of these claims. This position is not sound. Paragraph 7.18 is the Exculpation and Limitation of Liability clause of the plan. It protects, defensively, the named parties from certain actions and liabilities. It cannot be read as authority for offensive claims.

Since the claims belong to the Creditor Trust, there is no case or controversy between Plaintiff and Defendant Huntington, defeating justiciability. The Creditor Trust stands to benefit from successful prosecution of these claims, not Plaintiff. Not only does this create an Article III standing problem, but also limits the court's jurisdiction under prudential standing, which frequently prohibits a party from asserting the rights of a third party. Kochins v. Linden-Alimak, Inc., 799 F.2d 1128 (6th Cir. 1986) (citing Allstate Ins. Co. v. Wayne Cty., 706 F.2d 689, 692-93 (6th Cir. 1985) and (Warth, 422 U.S. 490, 499); Sefa v. Kentucky, 510 Fed.App'x 435, 438 (6th Cir. 2013) *cf.* Ralph Gonnocci Revocable Living Tr. v. Three M Tool & Mach., Inc., 2006 WL 89867 (E.D. Mich. 2006) (finding that the trust, which owned patent allegedly infringed by defendants, had standing to bring the complaint). On these principles, the court concludes that Plaintiff has not demonstrated standing and therefore grants Huntington's motion to dismiss.

On a final note, Plaintiff also argues that the claims in its complaint are not core claims and therefore were not part of the estate property transferred to the Creditor Trust. Whether a claim is core is utterly irrelevant. The core/non-core designation merely determines which court has jurisdiction. This court can hear non-core, related claims but cannot enter final judgments, requiring the submission of findings of fact and conclusions of law to District Court. 28 U.S.C. § 157(c)(1). This court has consistently maintained that the legal malpractice action against Debtor's bankruptcy counsel is a core claim. The court has stated its position, in its previous opinion on the motion to remand, that it considers the claims at issue in this complaint to be at

7

least related to the bankruptcy case, thereby falling under this court's exercise of jurisdiction pursuant to 28 U.S.C. § 157. These claims belong to the Creditor Trustee and any judgment obtained is preserved for beneficiaries of the Creditor Trust.

**B. The releases**

Alternatively, Huntington argues that Plaintiff's claims have been released. The court declines to consider this argument on the present Rule 12(b)(1) motion to dismiss challenging the court's subject matter jurisdiction. As an affirmative defense, release does not speak to subject matter jurisdiction. *See, e.g.,* O'Brien v. Ed Donnelly Enter., Inc., 575 F.3d 567 (6th Cir. 2009) (discussing the affirmative defense of res judicata).

Further, release is an affirmative defense under Civil Rule 8(c) and generally invokes review under Rule 12(b)(6), which focuses mainly on the allegations of the complaint. Geiling v. Wirt Fin. Serv., Inc., 2014 WL 8473822 (E.D. Mich. 2014). The ability to raise an affirmative defense on a motion to dismiss is limited by the contents of the complaint. Id. (citing Jones v. Bock, 549 U.S. 199, 215 (2007); Lutz v. Chesapeake Appalachia, LLC, 717 F.3d 459, 464 (6th Cir. 2013). Not only are Huntington's release arguments beyond the scope of a 12(b)(1) motion, they also go beyond the scope of the complaint.

**II.     The HLP Motion to Dismiss**

Under the authority of Federal Rule of Civil Procedure 12(b)(1) and (6), incorporated into bankruptcy practice with Federal Bankruptcy Rule 7012, Defendants HLP, Oscar and Krause move to dismiss counts four and five of the complaint. In count four, Plaintiff alleges that Krause's representation of Huntington, as trustee of the Trust, was a conflict of interest intended to better Huntington's position as a secured lender of Schwab Inc. to the detriment of Schwab Inc. The count contains a claim for civil conspiracy between HLP and Huntington. Count five alleges that Oscar either failed to disclose or concealed the nature of the conflict between HLP and Huntington. Movants set forth three grounds for dismissal: (1) the claims are barred by res judicata, (2) Plaintiff lacks standing, and (3) the claims are time-barred.

**A. Standing**

Previously, the court found that the shareholders could not maintain malpractice claims derivatively, Schwab v. Oscar (In re SII Liquidation Co.), (Bankr. N.D. Ohio 2012) (9/20/12), and this action appears to be Plaintiff's circumvention. Plaintiff is under the misimpression that re-purchase of the stock resulted in reclamation of an interest in these claims. However, purchase of the stock did not re-vest the claims. The Share Purchase Agreement between the Creditor Trust and David Schwab specifically declares "[t]he Purchaser's sole rights as holder of the Stock shall be to effectuate actions as to property held by the Debtors, and to receive a distribution of equity in the event that all beneficiaries of the Creditor Trust receive payment in full on account of their allowed claims . . . ." (M. for Ord. Approving Settlement, Ex. B, Adv. No. 12-6022, ECF No. 142) Since there was no transfer of these claims from the Creditor Trust

to Plaintiff, these claims are not Debtors' property. Consequently, Plaintiff does not own the malpractice claims, and the claims remain property of the Creditor Trust.

This leads to the overwhelming conclusion that Plaintiff lacks standing to pursue these claims. Plaintiff seeks damages to recoup the low sale price obtained during the chapter 11 sale process as a result of Defendants' alleged misdeeds. If successful, the recovery would inure to the benefit of creditors under the Creditor Trust, not Plaintiff. Equity interests are paid after payment in full of creditor claims. This limitation on recovery defeats both constitutional and prudential standing. A remedy is unlikely to redress any injury to Plaintiff and Plaintiff cannot assert the rights of the third party Creditor Trust. Consequently, the court finds Defendants' motion to be well taken and it is granted.

Additionally, Plaintiff has made several statements related to standing which are either wrong or unsupported. For example, Plaintiff argues that this court previously held Debtor had standing to pursue legal malpractice claims.[8] This is patently wrong. Plaintiff apparently believes that the settlement agreement between the Creditor Trustee transferred these claims. The court disagrees. Contrary to what Plaintiff declares, the court finds no support for this in the stock transfer or settlement agreement. Plaintiff also asserts that all the claims accrued post-petition. This claim has been addressed and rejected by this court in this proceeding. Schwab Ind., Inc. v. The Huntington Nat'l Bank (In re SII Liquidation Co.), 2014 WL 5463883 (Bankr. N.D. Ohio 2014). In Ohio, a legal malpractice claim accrues when

> There is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

Harper v. Anthony, 2014 WL 265574 (Ohio App. 8 Dist. 2014) (citing Zimmie v. Calfee, Halter and Griswold, 43 Ohio St.3d 54 (1989)). Plaintiff consistently uses David Schwab's alleged date of discovery as the operative date, ignoring the alternative "should have discovered" measure.[9] In light of its previous findings, and Plaintiff's misconceptions, no further time is warranted.

### B. Res judicata

---

[8] Plaintiff cites to "Bankr. Doc. 41, filed 9/20/12" in support. This appears to reference the opinion entered in the related adversary proceeding Schwab Ind., Inc. v. Oscar (In re SII Liquidation Co.), Adv. No. 12-6035 (Bankr. N.D. Ohio Sept. 20, 2012).

[9] In previous opinions, the court rejected Plaintiff's actual discovery date in favor of a constructive discovery date. Schwab v. Oscar (In re SII Liquidation Co.), 2012 WL 4327055 (Bankr. N.D. Ohio 2012); Schwab v. Oscar (In re SII Liquidation Co.), 2014 WL 232113 (Bankr. N.D. Ohio 2014).

Defendants also argue that Plaintiff's claims are barred by res judicata under Rule 12(b)(6). Under this claim preclusion doctrine, a decision in a previous lawsuit can prevent relitigation of claims in a subsequent action. Four elements are required in order for res judicata to apply:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

JPMorgan Chase Bank, N.A. v. Winget, 602 Fed.App'x 246 (6th Cir. 2015) (citing Browing v. Levy, 283 F.3d 761, 771 (6th Cir. 2002) (citation and quotation marks omitted)). Elements one, three and four do not appear to be in dispute. In the legal malpractice action by Plaintiff's shareholders, filed on May 10, 2012, this court rejected the claims, Schwab v. Oscar (In re SII Liquidation Co.), 2012 WL 4327055 (Bankr. N.D. Ohio 2012), and then denied relief from judgment. 2014 WL 232113 (Bankr. N.D. Ohio 2014) *aff'd* Schwab v. Oscar (In re SII Liquidation Co.), 517 B.R. 72 (B.A.P. 6th Cir. 2014). Defendants' supposed malpractice was the subject of the previous action by the individual shareholders, thereby satisfying the third and fourth elements. Plaintiff challenges only the second consideration, arguing that it was not a party to the previous actions. The court, again, disagrees.

The court previously denied relief on the malpractice claims based on res judicata, relying on the orders approving Defendants' fee applications in the main case. Schwab v. Oscar, 2012 WL 4327055. Schwab Inc. hired Defendants and operated as debtor-in-possession. It was clearly a party to Defendants' fee applications. To now suggest that the Creditor Trustee was in control, leaving Plaintiff with no rights or abilities, is wrong. Plaintiff overlooks the fact that the underlying basis for dismissal in the related Schwab v. Oscar adversary was the entry of a final order on Defendants' fee applications and Plaintiff/Debtors were clearly parties to that order. The orders granting fee applications bound Plaintiff then and bind Plaintiff now.

Plaintiff's refinement of the legal malpractice claims against Defendants from those presented in Schwab v. Oscar, Adv. No. 12-6035 is unavailing. Plaintiff now has two layers of findings and conclusions from previous decisions to hurdle in order to proceed with its claims. In spite of monumental effort, it has not prevailed. These claims were claims that should have been litigated previously, during the fee applications. Dismissal is warranted on res judicata.

**C. The statute of limitations**

Plaintiff alleges that the one year statute of limitations for legal malpractice began on May 3, 2013, the date that the opinion letter from Attorney Krause was produced. Findings of this court repudiate this position. Specific bases include an email between Defendant Oscar and David Schwab dated February 17, 2010 (Def's Resp., Ex. A, Adv. No. 12-6035, ECF No. 48-2), disclosure of the conflict in the application to employ Hahn Loeser, filed with the court on

February 28, 2010 (App. to Employ Hahn Loeser ¶ 46, Main Case No. 10-60702, ECF No. 7), and a contention that the Schwabs themselves produced the letter in 2011 in separate litigation. *See* Schwab v. Oscar, 2014 WL 232113. Two of these pre-date the bankruptcy case, and the other occurred after the bankruptcy filing at a time when Plaintiff was acting as debtor-in-possession. However, because this court did not specific make a finding as to a date that Plaintiff knew, or should have known, of the legal malpractice claim, it is unable to determine whether the statute of limitations did expire. The court cannot grant dismissal on this ground.

## CONCLUSION

Plaintiff is the liquidated debtor in the underlying case. In 2010, the bulk of its assets were sold and remaining assets transferred to the Creditor Trust for the benefit of creditors. David Schwab, a former shareholder, purchased the retired stock and initiated this lawsuit on behalf of Plaintiff. According to Plaintiff, it is entitled to significant damages for Huntington's breach of duties as Trustee of the Schwab Trust and the HLP Defendants' legal malpractice. Defendants contest Plaintiff's standing to bring those claims.

Standing looks at whether the plaintiff in a case is entitled to have the dispute heard by the court, a question of subject matter jurisdiction. Here, the court finds that the claims are not owned by Plaintiff, but by the Creditor Trustee, which is also the beneficiary of the claims. For this reason, the court finds it does not have jurisdiction to hear this dispute and grants both Huntington and the HLP Defendants' motions to dismiss.

A separate order will be entered immediately.

#   #   #


**Service List:**

Charles V. Longo
Matthew D. Greenwell
25550 Chagrin Blvd.
#320
Beachwood, OH 44122

Andrew S. Nicoll
Porter Wright Morris & Arthur, LLP
41 S. High Street, Suite 3100
Columbus, OH 43215

11

Jack B Cooper
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213

Karen Swanson Haan
Michael A. VanNiel
Daniel Rubin Warren
Thomas D. Warren
Baker & Hostetler, LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, OH 44114-3482

12