**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 10:54 AM March 12, 2018**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| SII LIQUIDATION COMPANY, | ) | CASE NO. 10-60702 |
| | ) | |
| Debtor. | ) | CONSOL. ADV. NO. 14-6024 |
| _____ | ) | |
| SCHWAB IND., INC., | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| THE HUNTINGTON NATIONAL | ) | **MEMORANDUM OF OPINION** |
| BANK et al., | ) | **(NOT INTENDED FOR** |
| | ) | **PUBLICATION)** |
| Defendants. | ) | |

On May 30, 2017, the court granted Defendants Hahn, Loeser & Parks, LLP, Lawrence E. Oscar, and Andrew Krause's ("Defendants") Rule 9011 motion for sanctions against Plaintiff and its counsel ("Respondents"). It ordered Defendants to submit a fee itemization and allowed Plaintiff and its counsel to respond. The matter is now before the court to determine the appropriate sanction.

1

The court has subject matter jurisdiction of the underlying bankruptcy case pursuant to 28 U.S.C. § 1334 and the general order of reference entered by the United States District Court for the Northern District of Ohio.   Venue in this district is appropriate under 11 U.S.C. § 1409. This opinion represents the court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

## BACKGROUND

The court hereby incorporates the facts set forth in the May 30, 2017 opinion.

## DISCUSSION

Defendants request $508,546.79 in sanctions.[1]   The bulk of this figure is charges from Baker & Hostetler LLP ("Baker & Hostetler"), Defendants' legal counsel in the malpractice action.   Baker & Hostetler discounted their actual fees and expenses more than $100,000.00 as a courtesy.   The itemization also includes fees charged by Dennis R. Rose, an attorney with HLP, acting as in-house counsel.   There are also amounts expended for an expert, Brian F. Toohey, providing his opinion on the fees charged, and fees incurred by local counsel Jack B. Cooper, from the Canton office of Day Ketterer.

Defendants broke the fees into six categories. Respondents generally object to the total request as wholly unreasonable and set forth several specific grounds for denying particular portions of the request.   Respondents maintain the motion for sanctions was not timely.   They also argue that this is not an opportunity to shift fees and point out that, at its core, the sanction relates to a response to a motion to dismiss, making the request excessive.

In awarding fees, the court is guided by Rule 9011(c)(2):

> *Nature of Sanctions; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed.R.Bankr.P. 9011.   While compensation to a victim may be a by-product of sanctions, the primary purpose is deterrence.   Rentz v. Dynasty Apparel Indus., 556 F.3d 389, 400 (6th Cir. 2009).   Rule 9011(c)(2) is not purposed as a fee-shifting provision.   In re Beatty, 401 B.R. 278 (Bankr. S.D. Ohio 2009); Baermann v. Ryan (In re Ryan), 411 B.R. 609 (Bankr. N.D. Ill. 2009). With this guidance, the court is assured that a sanction of over a half million dollars is far more than necessary to deter repetition and prevent comparable conduct.

---

1 Per Supplement to Itemized Fee Statement of HLP Defendants filed October 19, 2017.

**Timing of Defendants' Sanction Motion**

Respondents argue that Defendants' motion for sanctions was untimely because it was filed after the court issued a ruling on the motion to remand in Defendants' favor.   Filing the sanctions motion after the court denied remand, Respondents assert they were unable to mitigate as intended by the rule.   Rule 9011(c)(1)(A) states, in applicable part:

> The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

On October 28, 2014, Defendants provided notice of the sanctions motion by mail and did not file the motion with the court until November 24, 2014, thereby providing the requisite safe harbor period.   Respondents suggest they were unable to withdraw or correct the underlying pleadings, making the safe harbor hollow.   The court partially agrees as the argument relates to the motion to remand, as discussed further below.

Respondents overlook the fact that denial of the motion to remand only determined that this court would retain jurisdiction following removal.   It was not a substantive ruling on the complaint or the pending motion to dismiss.   When the court denied the motion to remand, Defendants' motion to dismiss was pending.   While the horse was through the gate for remand issues, Respondents clearly had time to withdraw or amend the complaint before the court ruled on the motion to dismiss.   The court rejects Respondents' argument to any extent it claims the motion for sanctions was untimely *per se*.

**Removal and Remand Proceedings**

Defendants request $130,846.50 in this category, starting with the time for "conducting an assessment of the state court action when it was filed, removing the action to this Court, and preparing the HLP defendants' opposition to plaintiff's frivolous motion to remand the case to state court."   (Itemization, p. 4, ECF No. 141)   As stated above, Respondents maintain Defendants are not entitled to recover fees incurred prior to the filing of the sanctions motion. The court agrees.

As Respondents identify, Defendants considered sanctions as early as June 2014, well before they filed either the motion to dismiss or the motion to remand.   Yet Defendants did not serve the sanctions motion until October 2014 and filed it a month later.   This clearly hampered Respondents' ability to avail themselves of Rule 9011(c)(1)(A)'s safe harbor with regard to the motion to remand.   In re M.A.S. Realty Corp., 326 B.R. 31 (Bankr. D. Mass. 2005); The Bd. of Trustees v. Quinones (In re Quinones), 543 B.R. 638 (Bankr N.D. Cal. 2015).   Respondents' timing argument as it relates to fees incurred prior to the sanctions motion is well-taken.   The

3

court will not allow reimbursement of any expenses incurred before Defendants filed the motion for sanctions.

## Reimbursement Related to Appellate Matters

Defendants itemized numerous expenses, totaling thousands and thousands of dollars, related to various appellate matters.   This court concludes that the appellate court is the appropriate forum to address sanctions for litigation that occurred at the appellate level.

> The word "court" in Rule 9011 is defined in Fed.R.Bankr.P.
> 9001(4) as "the judicial officer before whom a case or proceeding
> is pending." Rule 9011(a) states in part that if a document is signed
> in violation of this rule, the court may impose a sanction including
> an order to pay "the reasonable expenses incurred because of the filing
> of *the document.'* (emphasis added).   Thus it appears that the proper
> court to impose sanctions for filing an appeal is the court hearing the
> appeal.

In re Westin Capital Markets, Inc., 184 B.R. 109 (Bankr. D. Ore. 1995); citing Hedges v. Resolution Tr. Corp., 32 F.3d 1360 (9th Cir. 1994), *cert denied* 514 U.S. 1082 (1995); In re Fashion Shop of Ky., Inc., 433 B.R. 202 (Bankr. W.D. Ky. 2010); In re Brown, 2009 WL 10633429 (Bankr. M.D. Fla. 2009) (unpublished).   The court denies any fees and expenses incurred in pursuing appeals heard by either the Bankruptcy Appellate Panel for the Sixth Circuit, the District Court for the Northern District of Ohio or the Sixth Circuit Court of Appeals.

## Reimbursement Related to the Sanctions Motion

Defendants also request nearly $100,000.00 in fees and expenses associated with the sanctions motion, including preparation of the fee itemization.   Plaintiffs contend the amount is "outrageous."   If not denied in its entirety, Respondents suggest $6,000.00 - $8,000.00 is reasonable, especially considering many arguments advanced were identical to those advanced in earlier disputes and therefore did not require "significant effort."   They also point out that Rule 9011(c)(2) permits payment of "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation" when "warranted for effective deterrence."

The sanctions motion is a twenty-three page document:   a four page motion, a seventeen page memorandum of law, and a two page exhibit.   Baker Hostetler billed in excess of sixty-six hours over more than five months, totaling in excess of $32,000.00 in attorney fees, to arrive at the final product.   Upon review of the fee itemization and the final product, the court cannot find the time spent was reasonable.

Three different attorneys billed time for drafting the motion:   Karen Swanson Haan, Thomas Warren, and Daniel Warren.   On July 1, 2014, both Ms. Haan and Mr. T. Warren billed time to "draft motion for sanctions."   The court is concerned that there is unnecessary overlap in services, as well as churning.   This concern is buttressed by the affidavit of Canton attorney

4

Ralph F. Dublikar, who avers "[i]t is my further opinion that it was not necessary for three partners, three associates, and two paralegals to be working on this case at the same time." (Obj. of Charles V. Longo and Charles V. Long Co., LPA to the Itemized Fee Stmt., Ex. B ¶ 21, ECF Doc. 150-2) ("Dublikar Affidavit") There are numerous entries and time charged for in-office communications and conferences with all the entities involved.

Additionally, when the motion was filed, the attached exhibit indicates it was served to Mr. Longo on October 28, 2014. Yet Ms. Swanson and Mr. T. Warren billed time on July 21, 2014 to "serve motion for sanctions on opposing counsel" and "draft sanctions notice letter." Similar entries were made on October 28, 2014, the date the motion was served, raising concerns about the accuracy of the fee itemization and inclusion of duplicative or unnecessary services.

The motion for sanctions contains arguments that (1) the state court lawsuit was barred by res judicata twice over, (2) it was based on "false, already-rejected allegations," (3) Plaintiff and counsel were attempting to evade this court's jurisdiction, (4) Plaintiff lacked standing, and (5) the lawsuit was barred by the statute of limitations. Several of these arguments are identical to those included in Defendants' motion to dismiss filed on June 24, 2014. Arguments advanced in the motion to dismiss include: (1) Plaintiff's claims are barred by res judicata, (2) Plaintiff lacks standing because the claims belong to the creditor trustee, and (3) the claims are time-barred. The court notes that there are portions of the sanctions motion that are identical or substantially similar to portions of the motion to dismiss. The time billed appears excessive based on this overlap.

After determining sanctions were appropriate, the court ordered Defendants to submit an itemized fee statement. Defendants filed the statement on July 28, 2017. Time entries related to this statement show fees charged with this filing are at least $9,500.00. The court is mildly perplexed by the amount of research time devoted to this filing throughout May and June 2017. While some research is understandable, for example, to determine the appropriateness of including in-house counsel fees, this filing was essentially the presentation of records kept in the ordinary course of business. To go from printing business records to nearly $10,000.00 is stunning.

**In House Counsel Fees**

Dennis R. Rose was in-house counsel for the HLP Defendants. The itemization includes in excess of $73,000.00 in billings for his participation in this matter. Respondents object to inclusion of these fees, arguing that Mr. Rose's role as liaison is not compensable.

The court has no difficulty with providing fees to in-house counsel under Rule 11. Eastway Constr. Corp. v. City of New York, 637 F.Supp558, 572 (E.D.N.Y. 1986) ("stating "[t]he deterrent nature of the Rule, therefore, does not preclude a market-based fee award to a party represented by in-house counsel") (other citations omitted). The United States District Court for Delaware cited two purposes in authorizing in-house counsel fee awards. Scott Paper Co., v. Moore Bus. Forms, Inc., 604 F.Supp. 835, 837 (D. Del. 1984). First, it discourages frivolous litigation from parties tempted to pursue lawsuits if in-house counsel were not

5

compensated and second, it compensates in-house counsel for the time that could have been spent on other matters.   Id.   Both reasons are creditable.

Defendants suggest that since Mr. Rose was pulled away from other work in handling this matter, he is entitled to fees.   But as Respondents point out, courts have distinguished cases involving "services of in-house counsel who actively tried the case . . . to . . . when in-house counsel acted primarily as a liaison between the client and outside counsel who had complete responsibility for the conduct of the case."   Dictiomatic, Inc. v. U.S. Fidelity & Guar. Co., 2000 WL 33115333, * 5 (S.D. Fla. 2000) (citing Burger King Corp. v. Mason, 710 F.2d 1480, 1498 (11th Cir. 1983) (other citations omitted)).   Courts are willing to compensate in-house counsel responsible for litigation over those acting as liaisons.   Id.   Some courts advocate allowance of a fee award when "fees would be awarded for the same work performed by outside counsel." Video-Cinema Films, Inc. v. Cable News Network, Inc., 2004 WL 213032, * 6 (S.D.N.Y. 2004) (citations omitted).

In the matters at hand, Mr. Rose was a liaison while Baker & Hostetler was in charge of actual litigation.   After reviewing the itemization provided by Mr. Rose, the court declines to include reimbursement of his services as part of the sanction.   Primarily, the court finds that awarding Mr. Rose fees carries a high risk of imposing double fees.   While Mr. Rose is an attorney, in this case his firm and colleagues are the clients.   When he bills for items such as the August 30, 2016 entry for reviewing appellant's brief and reviewing orders, it is a service for which Baker & Hostetler also seeks compensation on August 29, 2016.   (Itemized Fee Stmt., Ex. A, p. 71, ECF No. 141-1)   Mr. Rose's itemization fails to delineate what was undertaken as the client, instead billing for everything as an attorney.   Because he is an attorney, the court finds that he was likely more involved than an average client, as can be noted by the multiple entries where he is involved in "strategy" sessions with Baker & Hostetler.   In more typical cases, strategy would be left to counsel and not billed by a client.   Permitting reimbursement of Mr. Rose's time would unreasonably subject Plaintiffs to duplicative, inflated fees because Mr. Rose is an attorney as well as the liaison.

**The Lodestar Calculation**

A sanctions award is based on the lodestar method, the product of the time reasonably expended and a reasonable hourly rate. U.S. v. PNC Fin. Serv. Grp., Inc., 705 Fed.App'x 342, * 348 (6th Cir. 2017) (unpublished) (citing Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004)). As noted above, a cursory review left the court concerned that the time expended was inflated or inaccurate.   Respondents argue that the hourly rates, up to $760.00 per hour, charged by counsel for Defendants do not reflect a reasonable hourly rate for the Canton, Ohio market.   They contend that an appropriate hourly rate is "the prevailing market rate . . . the average rate charged by attorneys of comparable skill and experience defending legal malpractice cases in Canton, Ohio."   (Obj. of Charles V. Longo and Charles V. Longo Co., LPA to the Itemized Fee Stmt., p. 14, ECF No. 150)   In support of their position, they rely on The Ohio State Bar Association's "The Economics of Law Practice in Ohio in 2013" ("OSBA Publication") and an affidavit from attorney Ralph Dublikar, an attorney for over forty years in Canton, Ohio, and suggest that a rate of $250.00 to $270.00 is reasonable.   Defendants attach an affidavit from their expert, Brian F.

6

Toohey, opining the rates charged by counsel in the itemization are reasonable.   He never discusses a specific rate or offers any concrete foundation, other than his professional qualifications, for a given rate.

A sampling of rates from the itemization shows the following:

| **Time Period** | **Billing Entity** | **Time Expended** | **Hourly Rates** |
| --- | --- | --- | --- |
| 5/25/14 – 6/30/14 | Baker & Hostetler | 149.75 hours<br>147.50 hours | $660 - $685<br>$180 - $480 |
| 1/06/15 – 1/15/15 | Baker & Hostetler | 41.75 hours<br>.25 hours | $510 - $710<br>$185 |
| 9/06/16 – 9/30/16 | Baker & Hostetler | 58.25 hours<br>17.50 hours | $540 - $735<br>$195 - $350 |
| 9/22/16 – 3/24/17 | Dennis R. Rose | 23.50 hours | $530 - $540 |
| 6/11/15 – 6/15/15 | Jack B. Cooper | 2.00 hours | $265 |

Respondents are correct that the market rate in Canton is the basis for determining a reasonable hourly rate:

> A trial court, in calculating the "reasonable hourly rate" component of the lodestar computation, should initially assess the "prevailing market rate in the relevant community." Blum, 465 U.S. at 895, 104 S.Ct. 1541 (emphasis added). The Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge. Hudson v. Reno, 130 F.3d 1193, 1208 (6th Cir.1997), cert. denied, 525 U.S. 822, 119 S.Ct. 64, 142 L.Ed.2d 50 (1998).

Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 350 (6th Cir. 2000).2   Respondents presented probative evidence of the prevailing market rate in Canton, Ohio.   First, page thirty-nine (39) of

---

2 This is not to say that there is no possible bankruptcy matter that could be billed at such rates in Canton, Ohio. Matters of such complexity could arise here.   This is not the case.

the OSBA Publication indicates that the mean hourly rate for an office located in Canton in 2012 was $196.00, the median was $200.00. A rate of $270.00 represents the 95th percentile. Second, attorney Jack B. Cooper, a partner at the Canton firm of Day Ketterer, billed between $255.00 - $265.00 for services related to removal and remand issues in this adversary in 2014 and 2015. Finally, Ralph F. Dublikar, managing partner of a law firm in North Canton, Ohio, attested the following:

> In my opinion, the reasonable hourly rates for an experienced attorney defending a case such as this involving a claim of legal malpractice in the context of a bankruptcy proceeding in Stark County, Ohio would be $150.00 to $250.00 per hour for partners, $125.00 to $150.00 per hour for associates, and $100.00 per hour for paralegals. In all of my years of litigating matters throughout Stark County and Northeast Ohio, I have never encountered a situation where attorneys were charging in excess of $600.00 to $700.00 per hour as partners, and charging associate time at $300.00 to $350.00 per hour for this type of case. In my opinion, these were not reasonable hourly rates for Stark County or Northeast Ohio for this type of litigation.

(Obj. of Charles V. Longo and Charles V. Longo Co., LPA to the Itemized Fee Stmt., Ex. B ¶ 20, ECF No. 150-2)

The court acknowledges that the OSBA Publication contains figures for 2012 and this adversary proceeding was filed in 2014 and will make an adjustment accordingly. The court finds that Baker & Hostetler and Dennis R. Rose were billing more than double the market rate in Canton. Consequently, the court finds that a reduction of fifty percent (50%) to the hourly rate is warranted. A reasonable hourly rate for services provided by Baker & Hostetler and Dennis R. Rose are roughly half of the actual hourly rates charged in the fee itemization

**Mitigating Factors**

As previously stated, the primary purpose in imposing a sanction on these facts is to deter further litigation abuse, not provide an opportunity to fee-shift. Orlett v. Cincinnati Microwave, Inc., 954 F.2d 414, 420 (6th Cir. 1992). The Sixth Circuit directs courts to "impose the least severe sanction that is likely to deter." Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor, 875 F.2d 1224, 1229 (6th Cir. 1989) (citing Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3rd Cir. 1988) (other citations omitted)). In addition to factors previously discussed, courts also look at mitigating factors, including the sanctioned party's "ability to pay, the degree of bad faith or want of diligence, the amount of fees and costs resulting from the attorney's (or party's) inappropriate conduct, mitigating conduct, if any, and that amount necessary and effective to bring about deterrence." Orlett v. Cincinnati Microwave, Inc., 954 F.2d 414, 419 (6th Cir. 1992).

Attorney Longo urges the court to consider several mitigating factors and provided an affidavit in support. He has been an attorney for thirty-two years, licensed in two states, and has

never had a disciplinary action, reprimand, sanction or similar action levied against him.   He has an AV rating through Martindale Hubbell.   He practices in a small, two attorney firm and represents that "a modest sanction of attorneys' fees would substantially impact Longo and the firm."   (Obj. of Charles Longo, p. 18, ECF No. 150)   The mitigating factors are unchallenged and accepted by the court.

## The Sanction Amount

The conclusions above markedly shave the fee itemization by finding it is unreasonable on several fronts.   However, it is not wholly unreasonable, leaving the court to calculate a sanction amount that is reasonable and which will deter similar future conduct by Plaintiffs. To reach an amount, it will help to define the future conduct the court desires to curtail.   The court will briefly summarize the history of this matter to provide context.

Debtors knowingly filed chapter 11 cases.   They knew they did not have any money. They were aware of the sale proceedings and principals participated in the asset sale.   Debtors developed seller's remorse and directed that remorse at their bankruptcy counsel.   The court rejected the shareholder malpractice claims, finding they lacked standing and res judicata barred the claims.   Along the way, the court rejected certain factual contentions made by David Schwab, a shareholder and principal.   The shareholders filed a motion for relief from judgment, which was also rejected.   Debtors remained unsatisfied and devised a plan to purchase the stock of the liquidated debtors, hoping to circumvent the standing problem.   Upon transfer, the company filed the underlying complaint in state court, raising many of the same claims rejected by this court in the shareholder lawsuit.   Defendants removed the action to this court and Plaintiff sought remand.

When it decided the motion to remand, the court restated its position that the malpractice claims were prepetition claims that belonged to the estate and disagreed with Plaintiff's contention concerning the claims' accrual.   The court also found that any malpractice claims belonged to the creditor trust and Plaintiff's acquisition of the liquidated debtors' stock did not affect ownership.   At this point, Plaintiff had a ruling that the stock purchase did not have the intended result and it did not own any malpractice claims even if such claims existed.

At the time of the removal ruling, Defendants' motions to dismiss was pending, where Defendants argued Plaintiff lacked standing and res judicata barred the claims.   Plaintiff's responses to the motions disregarded the conclusions in the removal ruling.   Plaintiff arguee it had standing to assert the legal malpractice claims because it was not a party to the previous actions, leaving it unbound from res judicata.   Plaintiff also made an argument that the claims were timely and core claims belonged to Plaintiff.   Plaintiff's response is indicative of the two main problems the court seeks to curtail:   (1) relitigation of matters previously decided, and (2) arguments in bankruptcy court that demonstrate a profound lack of understanding of bankruptcy law and procedure.   The court is convinced that after the court denied the motion to remand, and made the conclusions therein, Plaintiff's response to the motions to dismiss were meritless. Considering the motion for sanctions was filed before Plaintiff responded to the motion to dismiss, Respondents were on notice that they should proceed conscientiously.   Failing to do so

9

opened Defendants to additional legal fees related to the motion to dismiss.

Defendants request over $191,000.00 for fees related to the motion to dismiss. The court is going to work from this basis, applying the conclusions above to reach an appropriate sanction. The problem for the court is that the fee itemization is chronological, not topical, leaving scraps of time devoted to the motion to dismiss here and there in the fee itemization. It is further complicated by lump sum entries that cover multiple items and contains items, such as appellate matters, which are not recoverable.

The court previously ruled that it would not award any fees for work performed before the motion for sanctions was filed. Since the motion to dismiss was filed in June 2014, before the sanctions motion on November 24, 2014, only time devoted to the motion to dismiss after November 24, 2014 is compensable. Plaintiff responded on June 10, 2015 and HLP replied on July 6, 2015. Mr. VanNiel billed $31,365.00; Mr. Daniel R. Warren billed $12,425.00; and Sarah M. Szalay billed $46.25 during this period, for a total of $43,836.25 for the reply brief. Baker & Hostetler provided a ten percent discount on this amount.

Applying the lodestar calculation to this, the court finds that the amount of time spent by the attorneys, 79 hours, is not reasonable when viewed in light of the final product. The final product contains three chiefly rehashed arguments. Some of the time entries, such as that on 6/10/15 for Mr. Daniel R. Warren, contain items unrelated to the motion to dismiss. Multiple days contain time allotted to interoffice communications billed by both attorneys. The court hereby reduces the time spent by a flat 25% in an attempt to balance inflated and duplicative charges. Mr. VanNiel's hours are reduced to 46.125; Mr. Warren's are reduced to 13.125, and Ms. Szalay's, which the court finds reasonable, are unchanged.

Next in the lodestar calculation is multiplying the reasonable hours by the appropriate hourly rate, which the court determined was half of the billed rate. As a result, Mr. VanNiel's hourly rate is $255.00, Mr. Warren's is $355.00, and Ms. Szalay's is $92.50. Multiplying these rates by the hours expended $16,444.39. The court hereby imposes a sanction of $16,444.39 against Mr. Longo and his firm.

Quixotically, the court is going to operate from the premise that there is also a natural deterrence resulting from sanctions against an attorney with an AV rating and unblemished record. Combined with the $16,444.39 sanction, the court is persuaded this is sufficient to deter future, similar conduct from Mr. Longo and his firm.

An order will be entered immediately.

#     #     #

**Service List:**

Matthew D. Greenwell
1200 Ontario St., 11th Floor
Cleveland, OH 44114

Charles V. Longo
25550 Chagrin Blvd., Ste 320
Beachwood, OH 44122

Andrew S. Nicoll
Porter Wright Morris & Arthur, LLP
41 S. High Street, Suite 3100
Columbus, OH 43215

Jack B Cooper
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213

Michael A. VanNiel
Daniel Rubin Warren
Thomas D. Warren
Baker & Hostetler, LLP
PNC Center
1900 East 9th Street, Suite 3200
Cleveland, OH 44114-3482

11